**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FRITZCO LLC, LOS GATOS-SARATOGA COMMUNITY EDUCATION AND RECREATION, and THE LAW OFFICE OF SAMUEL M. SMITH,** on behalf of themselves and all others similarly-situated, | **CASE NO. _____** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **FILED UNDER SEAL** |
| **VERIZON COMMUNICATIONS INC. and CELLCO PARTNERSHIP (D/B/A VERIZON WIRELESS),** | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiffs FritzCo LLC ("FritzCo"), Los Gatos-Saratoga Community Education and Recreation ("Los Gatos"), and The Law Office of Samuel M. Smith, P.C. ("Smith Law Firm") (collectively referred to herein as the "Plaintiffs"), by and through their undersigned counsel, bring this class action on behalf of themselves and a proposed class of all others similarly situated, against Defendants Verizon Communications Inc. and CellCo Partnership (d/b/a, Verizon Wireless) (collectively "Verizon" or the "Company"). Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation undertaken by Plaintiffs and their counsel of the contracts at issue, public records, and online postings and articles.

## I. NATURE OF THE CASE

1. This is a ▮▮▮▮▮▮ class action on behalf of ▮▮▮▮▮▮ of Verizon business account customers whose ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████    █████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████

2.    ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

3.    ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

4.    ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

5.    ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

6. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Many of the Plaintiffs are small

businesses who, during an unprecedented global pandemic, ████████████████████████

████████████████████████████████████████████ The result was devastating business

disruptions, lost profits and customers.

7. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

8.     Verizon is at fault for the harm suffered by its business account customers.

Verizon systems were ████████ ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

9.     Verizon failed to protect its business customers, even though it knew that ████

████████████████████████████████████████████████, many times over.

Despite having knowledge of the ████████████████████████████████████████

████, Verizon took no action to prevent or even to mitigate the harm.

10.     ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

11.

12.

13.

14.

15.

4

16.

17.

18.

19.     Similarly, when the Point of Contact for Channell Realty, an Arizona real estate agency and Verizon Business customer, called to report the fraud, Verizon immediately and permanently                                                          . In conversations with a Verizon representative from the fraud department,

                                                                                        The Verizon representative response was "*Why would Verizon make selling product difficult?*"

20.

21.     Plaintiffs seek to remedy these harms and prevent their future occurrence, individually and on behalf of themselves and a proposed class of all other similarly situated Verizon Business customers. Plaintiffs assert claims for themselves and on behalf of a nationwide class of consumers for Verizon's: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; and (iv) unjust enrichment; and on behalf of certain subclasses for violation of certain State's unfair and deceptive practices and privacy laws.

22.     Plaintiffs seek to recover, for themselves and a proposed class of all others similarly-situated, actual and statutory damages, injunctive relief, restitution, disgorgement, costs, and reasonable attorneys' fees.

## II.     JURISDICTION AND VENUE

23.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more members of the Class; (ii) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (iii) at least one member of the Class is a citizen of a State different from Verizon.

24.     This Court has personal jurisdiction over Verizon because Verizon is headquartered and has its principal place of business at 1095 Avenue of the Americas, in the State of New York. This Court also has diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a).

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)through (d) because Verizon's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.     THE PARTIES

26.     FritzCo LLC ("FritzCo") is an Indiana limited liability company with its principal place of business located in Charlestown, Indiana.

27.     Los Gatos-Saratoga Community Education and Recreation ("Los Gatos") is a California non-profit with its principal place of business located in Los Gatos, CA.

28.     The Law Office of Samuel M. Smith, P.C. ("Smith Law Firm") is a Texas corporation with its principal place of business located in Athens, TX.

29.     Verizon Communications Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1095 Avenue of the Americas, New York, New York 10036.

30.     CellCo Partnership (d/b/a Verizon Wireless) is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at One Verizon Way, Basking Ridge, NJ 07920.

31.     Verizon Communications Inc. and CellCo Partnership are collectively referred to herein as "Verizon".

## FACTUAL BACKGROUND

### A.     Verizon's Business Group Unit

32.     In November 2018, Verizon announced a strategic reorganization of its business.

33.     Under the new structure, effective April 1, 2019, two strategic business units were created: Verizon Consumer Group and Verizon Business Group ("Business Unit").

34.     According to Verizon's public filings with the SEC, the Business Unit "provides wireless and wireline communications services and products, video and data services, corporate networking solutions, security and managed network services, local and long distance voice

services and network access . . . to businesses, government customers and wireless and wireline carriers across the U.S."

35.     In 2019, the Business Unit's total revenue was $31.4 billion, or 24% of Verizon's consolidated revenues. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

36.     Nonetheless, Verizon's public filings concede that the Company is subject to federal and state laws and regulations relating to privacy and data security. *See* Verizon's 2020 Form 10-K.[1]   Verizon is subject to both FCC privacy requirements and FTC privacy and data security oversight. In addition, "[a]ttention to privacy and data security requirements is increasing at both the state and federal level, and several privacy-related bills have been introduced or are under considerations at each level," including new privacy laws that took effect in California and Maine in 2020. *Id.*

**B.**     ████████████████████████████████████████████████████████

        1.     FritzCo Sets Up A Verizon Business Account in 2019

37.     On December 6, 2019, FritzCo entered into a service contract with Verizon's Business segment for the provision of corporate cell phone service and devices for itself and its employees.

38.     ████████████████████████████████████████████

---

[1] Available at https://verizon.api.edgar-online.com/EFX_dll/ EdgarPro.dll? FetchFilingHTML1? SessionID= CW0wky8NSEJ-SKd&ID=14744806 (last accessed October 11, 2021).



39.     In setting up the Verizon business account, FritzCo provided Verizon Confidential Information about its Points of Contact and the business itself, including email addresses, personal and business physical addresses, telephone numbers, FritzCo's EIN, and credit card information.  In addition, Verizon maintains the contact information of FritzCo's clients. While FritzCo employees do not recall providing its EIN or the dates of birth or social security numbers of its Point(s) of Contact, it is possible.

2.

40.

41.

42.

43.

44.

45.

46.     After considerable effort, the Verizon fraud department finally confirmed his

identity, reviewed the account, and advised FritzCo that ███████████████████

███████████████████████████████████████████████████ .

47.

_____

48.

49.

50.     All of these fraudulent actions occurred *after* Verizon had already

.

51.

52.

53.

54.

55.

56.



57.     As a result of the fraudulent purchases, FritzCo incurred various new fees and charges for service and equipment. In the months leading up to the fraud, FritzCo's average Verizon payment was approximately $376 per month.  Following ███████████████ ██████████████████████████████████████████████████.

3.     FritzCo Conducts its Own Investigation

58.     FritzCo is a technology-based company and its Point of Contact has a background in technology and programming.

59.     Frustrated by the predicament, FritzCo's Point of Contact launched his own investigation to determine what had occurred, and to learn whether the fraud was internal or on Verizon's server.

60.     Through this investigation, FritzCo concluded that:

    a.

    b.

    c.

    d.

    e.

61. ████████████████████████████████████████████████
████████████████████████████████████████████████████████████

62.    FritzCo's Point of Contact personally contacted over two dozen corporate Points

of Contact who were able to confirm that they had experienced the exact same problem.

63. ███████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████

64. ███████████████████████████████████████

65. ████████████████████████████████████████████████████████████

66. ██████████████████████████████████████████

67.    One Florida-based business reported as follows:





68.     On December 9, 2020, FritzCo's Point of Contact contacted Verizon Executive Director of Fraud and Credit Strategy Ronald Simon, provided him a detailed account ███ ███████████████████████████████ ███ █████████████████████████████ ███. Mr. Simon told FritzCo's Point of Contact that someone would call him to get the details.

69.     On December 10, 2020, a Verizon representative called FritzCo's Point of Contact on a "restricted" number. FritzCo's Point of Contact, for a third time, provided his detailed report of ███████████████████████████████████████ ███ ████████████████████████████████████.

70.     The Verizon representative rejected FritzCo's offer to send this information, advising that this was unnecessary.

71.     On February 15, 2021, Timothy Walker, Manager of External Fraud Investigations at Verizon, contacted FritzCo's Point of Contact to inquire about the fraud. ████████████████████████████████████████████████ ███████████████████████████████There has been no further outreach or follow-up from Verizon.

72.     ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

14

███████████████████████████████████████████████████████

73.   ███████████████████████████████████████████

███████████████████████████████████.

74.   ███████████████████████████████████████████

███████████████████████████████████████████████████████

4.   <u>Los Gatos is Defrauded</u>

75.   Los Gatos, like FritzCo, signed a Verizon Wireless Retail Major Account Agreement which provided for the purchase of wireless services and devices at discounted prices for its business use. ██████████████████████████████████

███████████████████████████████████████████████████████

76.   In setting up the Verizon business account, Los Gatos provided Verizon Confidential Information about its Verizon account Point of Contacts (as administrators on the business account) and the business itself, including email addresses, personal and business physical addresses, telephone numbers, credit card information and the names and contact information of its employees.

77.   ███████████████████████████████████████████

███████████████████████████████████████████████████████

78.   The invoices Los Gatos received from Verizon, typically in the $350-$400 range, skyrocketed to over $4,000, █████████████████████████████

████████ As with FritzCo, Los Gatos's Point of Contact reviewed her account and discovered a number of ███████████████████████████

79.     Los Gatos immediately notified Verizon which concluded that there had been fraud on the account ████████████████████████████████████████████

████████████████████████████████████████████████

### 5.     Like FritzCo, The Smith Law Firm is Defrauded

80. The Smith Law Firm, like FritzCo and Los Gatos, signed a Verizon Wireless Retail Major Account Agreement which provided for the purchase of wireless services and devices at discounted prices for its business use.

81.     ████████████████████████████████████████████████

████████████████████████████████████ The Smith Law Firm signed up for individual cell phone numbers and devices for each of its employees.

82.     In setting up the Verizon business account, the Smith Law Firm provided Verizon Confidential Information about its Verizon account Points of Contact (as administrators on the business account) and the business itself, including email addresses, personal and business physical addresses, telephone numbers, the firm's EIN, credit card information, and the names and contact information of its employees.

83.     ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

84.     ████████████████████████████████████████████████

████████████████████████████████ As with FritzCo and Los Gatos,

the Smith Law Firm Point of Contact reviewed his account and discovered ███████████

███████████████████████████

85.    The Smith Law Firm's Point of Contact identified ████████████████

████████████████████████████████████████

██████████████████████████

86.    ██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

87.    As with FritzCo and Los Gatos, ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

88.    Verizon did not directly or immediately contact the Smith Law Firm when its

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████ ████████████████████████████████████
████████████████████████████████████████████████████
██████████████████

The Smith Law Firm immediately notified Verizon which also concluded that there had been fraud on the account.

**C.**     **Verizon's Misconduct** █████████

89.     To date, ██████████████████████████████████████████
████████████████████████████████████████████.

90.     ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

91.     The present pattern demonstrates that Verizon's business server ████████████
██████████████████████████████████████████. ████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

92.     ██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

93.     Verizon also failed to properly monitor its systems. Had it properly monitored its
systems, it would have discovered the ██████████████████████████████.

94.     Verizon had a duty pursuant to common law, industry standards, the parties'
contracts, and representations made in its own privacy policy to keep consumers' account
information confidential and to protect it from unauthorized access.

95.     For example, in December 2020, Verizon's Privacy Policy promised: "We use
technical, administrative and physical safeguards to help protect against unauthorized access to,
use or disclosure of information we collect or store. In addition, we train our employees on the
importance of primacy, security, and the proper ways to access, use and disclose customer

information. Our practices and policies . . . require us to keep personally identifiable information and other sensitive records only as long as reasonably necessary for business, accounting, tax or legal purposes."[6]

96.    Verizon's data security obligations were particularly important and well-known to Verizon given the substantial increase in data breaches throughout the retail industry preceding ███████████, including ███████████████████████. ██████████ ████████████████████████, was widely known throughout the retail industry, including to Verizon.

97.    In fact, Verizon publishes an annual report that it calls the "Data Breach Investigations Report" or "DBIR" in which it provides an annual analysis of security incidents and data breaches from a multitude of business sectors, both public and private. Verizon touts that its DBIR can help businesses "learn to protect [themselves] from cyberthreats" and "reduce risks with insights from more than 5,250 confirmed breaches."[7]

98.    Plaintiffs and class members provided their confidential information to Verizon with the reasonable expectation and mutual understanding that Verizon would comply with its obligations to keep Plaintiffs' data safeguarded and confidential, and would secure it from unauthorized access. Verizon failed to do so, in contravention of its own privacy policy.

99.    Verizon breached its duties, obligations, and promises by not:

    a.    ████████████████████████████████████ ███████;

    b.    ████████████████████████████████████ ███████;

---

[6] https://web.archive.org/web/20201202072708/https://www.verizon.com/about/privacy/full-privacy-policy
[7] https://www.verizon.com/business/resources/reports/dbir/

c. 

d.

e.

f.              .

100.    Verizon also violated the Federal Trade Commission Act (the "FTC Act"). The Federal Trade Commission ("FTC") has held that the failure to employ reasonable measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45.

101.    The FTC published guidance establishing reasonable data security practices for businesses, for instance: businesses should protect the personal customer information that they acquire; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security vulnerabilities.

102.    The FTC guidance also recommends that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone may be trying to penetrate the system; and watch for large amounts of data being transmitted from the system.

103.    The FTC has issued orders against businesses for failing to employ reasonable measures to safeguard customer data. The orders provide further public guidance to businesses concerning their data security obligations.

104.    Verizon knew or should have known about its obligation to comply with the FTC Act regarding data security.

105.    Verizon's misconduct violated the FTC Act, led to the data breach, and caused harm to Plaintiffs and class members.

## IV.    CLASS ACTION ALLEGATIONS

106.    The Plaintiff(s) repeat and allege Paragraphs 1-106, as if fully alleged herein. This claim is brought individually under the laws of New York and on behalf of all other companies whose Private Information was compromised as a result of ███████████ and reside in states having similar laws regarding deceptive trade practices.

107.    Pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4), Plaintiffs assert violations of the Arkansas Deceptive Trade Practices Act (Count 1), California Customer Records Act (Count 2), California Unfair Competition Law (Count 3), Indiana Deceptive Consumer Sales Act (Count 4), and the Texas Deceptive Trace Practices Consumer Protection Act (Count 5) on behalf of themselves and the following nationwide class (the "Nationwide Class" or the "Class"):

### NATIONWIDE CLASS

**All governments and businesses in the United States and its territories that have a Verizon business account and whose confidential information provided to Verizon was accessed and misused, resulting in fraudulent transactions on their Verizon business accounts and business interruptions between September 1, 2019 and present.**

108.    In the alternative, pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4), Plaintiffs assert state-wide subclasses on behalf of businesses in each of their respective states.

109.    Excluded from the Nationwide Class and each Subclass, if applicable, are any judicial officers presiding over this matter, members of their immediate family, and members of their judicial staff.

110.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of each Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are approximately 29 million small businesses in the United States, the vast majority of which obtain their internet, networking, and wireless business solutions through corporations like Verizon. There are several administratively feasible methods by which these businesses can be identified: The business names and addresses, as well as the names and addresses of each Plaintiff's corporate representative or point of contact, are available from Verizon's records, including Verizon's business account information, which list business names, account contact information, billing addresses, shipping addresses, and business points of contact; alternatively, Class members can self-identify and provide documentation (such as bills or invoices from Verizon) to confirm their Class membership. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

111.     **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** As to each Class and Subclass, this action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

a. ██████████████████████████████████████████████████
██████████████

b. ██████████████████████████████████████████████████
█████████████████;

c. ██████████████████████████████████████████████████
███████;

d. Whether Verizon owed a duty to Plaintiffs and Class and Subclass members to protect their Confidential Information;

e. Whether Verizon breached its duties to protect Confidential Information by failing to provide ███████████████ ;

f. Whether Verizon's conduct, including its failure to act, resulted in or was the proximate cause of the ██████ of its systems, resulting in the ████████████████ ████████████████████████████ ;

g. Whether Verizon's conduct renders it liable for negligence, negligence per se, unjust enrichment, or liable under the California Unfair Competition Law, Indiana Deceptive Consumer Sales Act, and Texas Deceptive Trade Practices Act;

h. Whether, as a result of Verizon's conduct, Plaintiffs and Class and Subclass members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled; and

i. Whether, as a result of Verizon's conduct, Business Plaintiffs and Class and Subclass members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief.

112. **Typicality: Federal Rule of Civil Procedure 23(a)(3).** As to each Class and Subclass, Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

113. **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate class representatives because their interests do not conflict with the interests of Class members who they seek to represent, Plaintiffs have retained counsel

competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

114.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Verizon, so it would be impracticable for Class members to individually seek redress for Verizon's wrongful conduct. Even if Class members could afford to litigate each claim independently, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CHOICE OF LAW FOR NATIONWIDE CLAIMS

115.    All Plaintiffs and members of all Classes were customers of Verizon's Verizon Business plans, and therefore were in contractual agreements with Verizon.

116.    Verizon Business customers agree to a set of "Business Terms of Service" which include "Generally Available Terms and Conditions" (located at https://www.verizon.com/about/terms-conditions/business-terms-of-service) which were unilaterally prepared by Verizon.

117.    The "Generally Available Terms and Conditions" provide, in Section 17, that "[t]he construction, interpretation and performance of this Agreement shall be governed by the laws of the State of New York . . . ."

118.    In addition, "Verizon and Customer each irrevocably consents to the personal and subject matter jurisdiction of the courts located in the County of New York, State of New York in all matters arising from or relating to this Agreement . . . ."

119.    In addition, the State of New York has a significant interest in regulating the conduct of businesses operating within its borders. New York, which seeks to protect the rights and interests of New York and all residents and citizens of the United States against a company headquartered and doing business in New York, has a greater interest in the nationwide claims of Plaintiffs and Nationwide Class members than any other state and is most intimately concerned with the claims and outcome of this litigation.

120.    The principal place of business of Verizon, located at 140 West St, New York, NY 10007, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its data security functions and major policy, financial, and legal decisions.

121.    Verizon's response ▮▮▮▮▮▮▮▮▮ at issue here, and corporate decisions surrounding such response, were made from and in New York.

122.    Verizon's breaches of duty to Plaintiffs and Nationwide Class members emanated from New York.

123.    Application of New York law to the Nationwide Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because New York has a

significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

124.    Under New York's choice of law principles, which are applicable to this action, the common law of New York applies to the nationwide common law claims of all Nationwide Class members. Additionally, given New York's significant interest in regulating the conduct of businesses operating within its borders, New York's Deceptive Business Acts and Practices (General Business Law Section 349) may be applied to non-resident plaintiffs.

## V.    CAUSES OF ACTION

### CLAIMS ON BEHALF OF THE NATIONWIDE CLASS

#### COUNT ONE
#### NEGLIGENCE

125.    Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

126.    Plaintiffs bring this claim individually and on behalf of all the Classes.

127.    Plaintiffs and Class Members entrusted their private business information to Verizon. Verizon owed to Plaintiff and the other Class Members a duty to exercise reasonable care in storing, handling and using their business information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the data breaches, theft, and unauthorized use, and to promptly detect attempts at unauthorized access.

128.    ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



129. Verizon had a "special relationship" with Plaintiffs and Class Members. The willingness to share and entrust Plaintiffs' and Class Members' private business information with Verizon was predicated on the understanding that Verizon would take adequate security precautions.

130. 

131. Indeed, Verizon is so aware of the value of this data that it regularly publishes statistics on data breaches, their prevalence, cost, and the dangers associated with such breaches. *See, e.g.,* The Verizon Business 2021 Data Breach Investigations Report.[8]

132. The information contained on Verizon's servers is highly valuable, and

---

[8] https://enterprise.verizon.com/resources/reports/2021-data-breach-investigations-report.pdf?_ga=2.254486987.234515461.1630327539-857473764.1626205724&_gac=1.90692072.1630327539.Cj0KCQjwg7KJBhDyARIsAHrAXaGRSXE4lPw_Hw7y27xLYTSdCNAgU40yCLdXqeZO88O9LWPdPfYPFB0aAiBpEALw_wcB

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████

133.     Verizon spends substantial time and monetary resources each year publishing an annual report on the prevalence of, dangers of, and protections against data breaches for companies, and as a result, had actual knowledge of the risk in obtaining, using, communicating, and storing private business information, the importance of exercising reasonable care in handling it, and the attendant risk for identity theft and fraud Verizon may expose its customers to through lax security.

134.     Verizon breached its duty by failing to ████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████ which actually and proximately caused the ███████████ and Plaintiffs' and the other Class Members' injuries. As a direct and traceable result of Verizon's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages.

135.     Verizon's breach of its common law duties to exercise reasonable care actually and proximately caused the Plaintiff and other Class Members actual, tangible injury-in-fact, and damages, including without limitation ███████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████ caused by Verizon's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT TWO

### NEGLIGENCE PER SE

136.    Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

137.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Verizon, of failing to use reasonable measures to protect certain classes of confidential information.

138.    Verizon violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' confidential information and not complying with applicable industry standards. Verizon's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of ███████████████████████ ██████ including, specifically, the damages that would result to Plaintiffs and Class Members.

139.    ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████ ███████████████████
█████████████████████████████    ███████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

140.    Plaintiffs and Class Members are within the class of persons that the FTC Act and N.Y. Gen. Bus. Law § 899-aa were intended to protect.

141.    The FTCA establishes a statutory standard of care, which Verizon has inexcusably violated. These inexcusable violations constitute negligence per se.

142.    Plaintiffs and Class Members were foreseeable victims of Verizon's violation of the FTC Act and N.Y. Gen. Bus. Law § 899-aa. ████████████████████████████████ ███████████████████████████████████████████████████, and failure to timely and adequately report it to Class Members themselves, would cause damages to Class Members.

143.    The harm that occurred, is occurring, and will continue to occur as a result of the Verizon ████████████████ is the type of harm the FTC Act and N.Y. Gen. Bus. Law § 899-aa were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

144.    Verizon engaged in this misconduct recklessly, in conscious neglect of duty and in callous indifference to consequences, and, in the alternative, with such want of care as would raise a presumption of a conscious indifference to consequences. Indeed, ████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Verizon was or should reasonably have been, aware of its misconduct and of the foreseeable injury that would probably result, and with reckless indifference to consequences, consciously and intentionally committed the wrongful acts and omissions herein. Verizon's actions and omissions were, therefore, not just negligent, but grossly negligent, reckless, willful, and wanton.

145.    As a direct and proximate result of Verizon's negligence per se, Plaintiffs and
Class Members suffered and will continue to suffer injury, which includes, but is not limited to,
actual fraud, ███████████████████████████████████ the monetary difference
between the amount paid for services as promised and the services actually provided by Verizon
(which did not include adequate or industry standard data protection), and continued
inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial
harm. Plaintiffs and Class Members now must more closely monitor their financial accounts,
credit histories and business records to guard against identity theft. Class Members also have
incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining
credit reports, credit freezes, credit monitoring services, and other protective measures to deter or
detect identity theft. Plaintiffs and Class Members have also experienced other damages
consistent with the theft of their information. Through its failure to timely discover, provide clear
notification of, and remedy the ███████ to consumers, Verizon prevented Plaintiffs and
Class Members from taking meaningful, proactive steps to secure their information.

146.    But for Verizon's violation of the applicable laws and regulations, ███████
█████████████████████████████████████████████████████████
███████

147.    The damages to Plaintiffs and the Class Members were a direct, proximate,
reasonably foreseeable result of Verizon's breaches of the applicable laws and regulations.

148.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to
be proven at trial.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT

149.   Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

150.   When Plaintiffs and the Class Members provided their information to Verizon, they entered into implied contracts in which Verizon agreed to comply with its statutory and common law duties and industry standards to protect their businesses' confidential and financial information.

151.   Based on the implicit understanding, Plaintiffs and Class Members accepted Verizon's offers of telecommunications services and provided Verizon with their private business and financial information.

152.   Plaintiffs and Class Members would not have provided their private business and financial information to Verizon had they known that Verizon would not safeguard their information as promised.

153.   Plaintiffs and Class Members fully performed their obligations under the implied contracts with Verizon.

154.   Verizon breached the implied contracts by failing to safeguard Plaintiffs' and Class Members' information.

155.   The losses and damages Plaintiffs and Class Members sustained (as described above) were the direct and proximate result of Verizon's breach of the implied contract with Plaintiffs and Class Members.

## COUNT FOUR
## UNJUST ENRICHMENT

156.    Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

157.    Plaintiffs and Class Members have an interest, both equitable and legal, in their confidential business information which was conferred upon, collected by, and maintained by Verizon, and that was ultimately stolen in the Verizon ███████.

158.    This confidential business information was conferred on Verizon directly by the Plaintiffs and Class Members themselves.

159.    Verizon was benefitted by the conferral upon it of the Confidential Information pertaining to Plaintiffs and Class Members and by its ability to retain and use that information. Verizon understood that it was in fact so benefitted.

160.    Verizon also understood and appreciated that the Confidential Information pertaining to Plaintiffs and Class Members was private and confidential and its value depended upon Verizon maintaining the privacy and confidentiality of that Confidential Information.

161.    But for Verizon's willingness and commitment to maintain its privacy and confidentiality, that Confidential Information would not have been transferred to and entrusted with Verizon. Further, if Verizon had disclosed that its data security measures were inadequate, Verizon would not have been permitted to continue in operation by regulators, its shareholders, and participants in the marketplace.

162.    In addition, hackers have conferred actual monetary enrichment upon Verizon using Plaintiffs' accounts.

33

163.    Upon information and belief, Verizon has not disgorged any sums gained because of the fraud committed using Plaintiffs' accounts. Indeed, Verizon has very likely benefitted in the tens of thousands of dollars in fraudulent sales.

164.    As a result of Verizon's wrongful conduct as alleged in this Complaint (including among things its utter failure to employ adequate data security measures, its continued maintenance and use of the Confidential Information belonging to Plaintiffs and Class Members without having ██████████████████████████████████████████████████████████ ██████████████████████████████████████ Verizon has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

165.    Among other things, Verizon continues to benefit and profit from the sale of the Confidential Information while its value to Plaintiffs and Class Members has been diminished.

166.    Verizon's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class Members' sensitive Confidential Information, while at the same time ████████████████ ████████████████████████████████████████████.

167.    Under the common law doctrine of unjust enrichment, it is inequitable for Verizon to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class Members in an unfair and unconscionable manner. Verizon's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

168.    The benefit conferred upon, received, and enjoyed by Verizon was not conferred officiously or gratuitously, and it would be inequitable and unjust for Verizon to retain the benefit.

Verizon is therefore liable to Plaintiffs and Class Members for restitution in the amount of the benefit conferred on Verizon as a result of its wrongful conduct, including specifically the value to Verizon of the Confidential Information that was stolen in the Verizon ▇▇▇▇▇▇ and the profits Verizon is receiving from the use and sale of that information.

**CLAIMS ON BEHALF OF THE STATE SUBCLASSES**

**CLAIMS ON BEHALF OF THE CALIFORNIA CLASS**

**COUNT FIVE**

**CALIFORNIA CUSTOMER RECORDS ACT,**
**Cal. Civ. Code §§ 1798.80, et seq.**

169.     California Plaintiff Los Gatos ("California Plaintiff," for purposes of Counts Five and Six), individually and on behalf of the California Subclass, repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose Confidential Information was compromised as a result of the ▇▇▇▇▇ and reside in states having similar laws regarding customer records.

170.     "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

171.     Verizon is a business that owns, maintains, and licenses "personal information", within the meaning of Cal. Civ. Code § 1798.81.5(d)(1), about Plaintiff and California Subclass members.

172.    Businesses that own or license computerized data that includes personal information, including SSNs, are required to notify California residents when their personal information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

173.    Verizon is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82(h).

174.    California Plaintiff and California Subclass members' Confidential Information includes "personal information" as covered by Cal. Civ. Code §§ 1798.81.5(d)(1), 1798.82(h).

175.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

176.    By failing to ███████████████ in a timely and accurate manner, Verizon violated, and continues to violate, Cal. Civ. Code § 1798.82.

177.    As a direct and proximate result of Verizon's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, California Plaintiff and the California Subclass Members suffered damages, as described above.

178.    California Plaintiff and California Subclass members seek all available relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

36

## COUNT SIX

### CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code §§ 17200, et seq.

179.    California Plaintiff, individually and on behalf of the California Subclass, repeats

and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set

forth herein. This claim is brought individually under the laws of California and on behalf of all

other natural persons whose Confidential Information was compromised as a result of the ███

███████ and reside in states having similar laws regarding unfair competition.

180.    Verizon is a "person" as defined by Cal. Bus. & Prof. Code §17201.

181.    Verizon violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging

in unlawful, unfair, and deceptive business acts and practices.

182.    Verizon's "unfair" and "deceptive" acts and practices include:

a.      

b.      Verizon's failure to implement and maintain reasonable security measures
        also was contrary to legislatively-declared public policy that seeks to
        protect consumers' data and ensure that entities that are trusted with it use
        appropriate security measures. These policies are reflected in laws,
        including, the FTC Act, 15 U.S.C. § 45, and California's Consumer
        Records Act, Cal. Civ. Code § 1798.81.5.

c.      Verizon's failure to implement and maintain reasonable security measures
        also lead to substantial consumer injuries, as described above, that are not
        outweighed by any countervailing benefits to consumers or competition.
        Moreover, because consumers could not know of Verizon's inadequate

security, consumers could not have reasonably avoided the harms that Verizon caused.

d.      Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

183.    Verizon has engaged in "unlawful" business practices by violating multiple laws, including the CCRA, Cal. Civ. Code §§ 1798.80, *et seq.* and the FTC Act, 15 U.S.C. § 45.

184.    Verizon's unlawful practices include:



a.      ████████████████████████████████████████████ ████████████ ;

a.      ████████████████████████████████████████████ ███████████████████████████ ;

b.      ████████████████████████████████████████████ ████████████████████████████, including duties imposed by the CCRA, Cal. Civ. Code §§ 1798.80, *et seq*, and the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the ████████ ;

c.      ████████████████████████████████████████████ ████████████ ;

d.      Misrepresenting that it would comply with common law and statutory ████████████████████████████████████████████ ████████████ ;

e.      ████████████████████████████████████████████ ██████████ ;

f.      ████████████████████████████████████████████ ██████████ ;

g.      ████████████████████████████████████████████ ████████████████████████ ; and

38

> h. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of California Plaintiff and California Subclass members' Confidential Information, including duties imposed by the CCRA, Cal. Civ. Code §§ 1798.80, *et seq* and the FTC Act, 15 U.S.C. § 45.

185.    Verizon's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Verizon's data security and ability to protect consumers' Confidential Information.

186.    Verizon's representations and omissions were material because they were likely to deceive reasonable consumers, including California Plaintiff and the California Subclass members, into believing that their Confidential Information was not exposed and misled California Plaintiff and the California Subclass members into believing they did not need to take actions to secure their identities.

187.    As a direct and proximate result of Verizon's unfair, unlawful, and fraudulent acts and practices, California Plaintiff and California Subclass members were injured, suffered business interruptions, and lost money or property, including monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of further fraud and identity theft, and loss of value of their Confidential Information, including but not limited to the diminishment of their present and future property interest in their Private Information and the deprivation of the exclusive use of their Private Information.

188.    Verizon acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded California Plaintiff and California Subclass members' rights.

189.     California Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Verizon's unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

<h3 style="text-align:center"><strong>CLAIMS ON BEHALF OF THE INDIANA CLASS</strong></h3>

<h3 style="text-align:center"><strong><u>COUNT SEVEN</u></strong></h3>

<h3 style="text-align:center"><strong>INDIANA DECEPTIVE CONSUMER SALES ACT,<br>Ind. Code §§ 24-5-0.5-1, et seq.</strong></h3>

190.     Indiana Plaintiff Fritzco identified above ("Indiana Plaintiff," for purposes of this Count), individually and on behalf of the Indiana Subclass, repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein. This claim is brought individually under the laws of Indiana and on behalf of all other natural persons whose Confidential Information was compromised as a result of the ▮▮▮▮▮▮▮ and reside in states having similar laws regarding deceptive consumer sales.

191.     Verizon is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

192.     Verizon is a "supplier" as defined by § 24-5-0.5-2(a)(1), because it regularly engages in or solicits "consumer transactions," within the meaning of § 24-5-0.5-2(a)(3)(A).

193.     Verizon engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

194.     Verizon's representations and omissions include both implicit and explicit representations.

195.     Verizon's unfair, abusive, and deceptive acts, omissions, and practices include:

a. 

b.

c.

d.

e.

f.

196.    Verizon's acts and practices were "unfair" because they caused or were likely to

cause substantial injury to consumers, which was not reasonably avoidable by consumers

themselves and not outweighed by countervailing benefits to consumers or to competition.

197.   Verizon's representations and omissions were material because they were likely to deceive reasonable consumers, including Indiana Plaintiff and the Indiana Subclass members, that their Confidential Information was not exposed and misled Indiana Plaintiff and the Indiana Subclass members into believing they did not need to take actions █████████████████ .

198.   The injury to consumers from Verizon's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury and an unwarranted risk to the safety of their Private Information or the security of their identity or credit. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

199.   Consumers could not have reasonably avoided injury because Verizon's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the ██████████████████ , Verizon created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

200.   Verizon's inadequate data security had no countervailing benefit to consumers or to competition.

201.   Verizon's acts and practices were "abusive" for numerous reasons, including:



c.



202.    Verizon also engaged in "deceptive" acts and practices in violation of Indiana

Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

    a.    Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

    b.    Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not;

    c.    Misrepresenting that the subject of a consumer transaction will be supplied to the public in greater quantity (*i.e.*, more data security) than the supplier intends or reasonably expects; and

    d.    Misrepresenting that certain sensitive, personal Confidential Information was not accessed during the Data Breach, when it was;

203.    Verizon intended to mislead Indiana Plaintiff and Indiana Subclass members and

induce them to rely on its misrepresentations and omissions.

204.    Verizon's representations and omissions were material because they were likely

to deceive reasonable consumers about the adequacy of Verizon's data security and ability to

protect the confidentiality of consumers' private Confidential Information.

205.    Verizon's representations and omissions were material because they were likely

to deceive reasonable consumers, including Indiana Plaintiff and the Indiana Subclass members,

that their private Confidential Information was not exposed and misled Indiana Plaintiff and the

Indiana Subclass members into believing they did not need to take actions to secure their identities.

206.   Had Verizon disclosed to Indiana Plaintiff and Indiana Subclass members that its data systems were not secure and, thus, vulnerable to attack, Verizon would have been unable to continue in business and it would have been forced to adopt ████████████████████████████ and comply with the law. Instead, Verizon was ████████████████████████████ ████████████████████████████████████████████ including Indiana Plaintiff and the Indiana Subclass. Verizon accepted the ████████████████████████████████ ████████████████████████████████████████████. Accordingly, because Verizon held itself out as maintaining a secure platform for private Confidential Information data, Indiana Plaintiff and the Indiana Subclass members acted reasonably in relying on Verizon's misrepresentations and omissions, the truth of which they could not have discovered.

207.   Verizon had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extent of the private Confidential Information in its possession. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████. ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████, Indiana Plaintiff and the Indiana Subclass members acted reasonably in relying on Verizon's misrepresentations and omissions, the truth of which they could not have discovered. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Indiana Plaintiff and the Indiana Subclass—and Verizon, because consumers are

unable to fully protect their interests with regard to their data, and placed trust and confidence in

Verizon. Verizon's duty to disclose also arose from its:

a. 

208.    Verizon acted intentionally, knowingly, and maliciously to violate Indiana's

Deceptive Consumer Sales Act, and recklessly disregarded Indiana Plaintiff and Indiana

Subclass members' rights. Verizon's actions were not the result of a mistake of fact or law,

honest error or judgment, overzealousness, mere negligence, or other human failing.

209.    Indiana Plaintiff sent a demand for relief on behalf of the Indiana Subclass

pursuant to Ind. Code § 24-5-0.5-5 on February 24, 2021. Verizon has not cured its unfair,

abusive, and deceptive acts and practices, or its violations of Indiana Deceptive Consumer Sales

Act were incurable.

210.    Since Indiana Plaintiff provided the requisite notice, Verizon has failed to cure its

violations of the Indiana Deceptive Consumer Sales Act.

211.    Verizon's conduct includes incurable deceptive acts that Verizon engaged in as

part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-

0.5-2(a)(8).

212.    As a direct and proximate result of Verizon's uncured or incurable unfair,

abusive, and deceptive acts or practices, Indiana Plaintiff and Indiana Subclass members have

suffered and will continue to suffer injury, ascertainable losses of money or property, and

monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

213.    Verizon's violations present a continuing risk to Plaintiff and Indiana Subclass members as well as to the general public.

214.    Indiana Plaintiff and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

### CLAIMS ON BEHALF OF THE TEXAS CLASS

### COUNT EIGHT

### TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, Texas Bus. & Com. Code §§ 17.41, et seq.

215.    Plaintiff Smith Law Firm identified above ("Texas Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein. This claim is brought individually under the laws of Texas and on behalf of all other natural persons whose ████████████████████████████████████████████████████████████ and reside in states having similar laws regarding consumer protection.

216.    Verizon is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

217.    Texas Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

218.    Verizon advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

219.    Verizon engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

      a.      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

      b.      Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

      c.      Advertising goods or services with intent not to sell them as advertised.

      d.      Verizon's false, misleading, and deceptive acts and practices include:

      e.



    k.    Misrepresenting that certain sensitive Confidential Information was not ███████████████████████████████

█ ████████████████████████████████████████████████████████

█ ████████████████████████████████████████████████████████████

220.    Verizon intended to mislead Texas Plaintiff and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

221.    Verizon's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Verizon's ████████████████ ███████████████████████████████████████████████.

222.    Verizon's representations and omissions were material because they were likely to deceive reasonable consumers, including Texas Plaintiff and the Texas Subclass members, that ████████████████████████████████ and misled Texas Plaintiff and the Texas Subclass members into believing they did not need to take actions to secure their identities.

223.    Had Verizon disclosed to Texas Plaintiff and the Texas Subclass members that its ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████, Texas Plaintiff and the Texas

Subclass members acted reasonably in relying on Verizon's misrepresentations and omissions, the truth of which they could not have discovered.

224.    Verizon had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extent of the Confidential Information in its possession, and the generally accepted professional standards in its industry. This duty arose because members of the public, including Texas Plaintiff and the Texas Subclass, possess a relationship of trust and confidence with Verizon. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Texas Plaintiff and the Texas Subclass, and Verizon because consumers are ███████████████████████████████████████████████ ███████████████████████. Verizon's duty to disclose also arose from its:



225.    Verizon engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Verizon engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

226.    Consumers, including Texas Plaintiff and Texas Subclass members, ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ with regard to

███████ Texas Plaintiff and Texas Subclass members lack expertise in ████████████

████████████████████████████████████████████████████████████████████████████.

Verizon took advantage of its special skill and access to Confidential Information to hide its

inability to protect the ████████████████████████████████████████████████████████

████████████████████████████.

227.    Verizon intended to take advantage of consumers' lack of knowledge, ability,

experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that

would result. The unfairness resulting from Verizon's conduct is glaringly noticeable, flagrant,

complete, and unmitigated. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████, and worked a substantial hardship on a significant and unprecedented number of

consumers. Texas Plaintiff and Texas Subclass members cannot mitigate this unfairness because

they ████████████████████████.

228.    Verizon acted intentionally, knowingly, and maliciously to violate Texas's

Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Texas Plaintiff

and Texas Subclass members' rights.

229.    As a direct and proximate result of Verizon's unconscionable and deceptive acts

or practices, Texas Plaintiff and Texas Subclass members have suffered and will continue to

suffer injury, ascertainable losses of money or property, and ████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████. Verizon's unconscionable and deceptive acts or

practices were a producing cause of Texas Plaintiff's and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

230.    Verizon's violations present a continuing risk to Texas Plaintiff and Texas Subclass members as well as to the general public.

231.    Texas Plaintiff and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for business interruption; mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## VI.    **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the other Class and Subclass members, respectfully requests that this Honorable Court enter judgment in its favor and against Verizon by:

a) Certifying this action as a class action pursuant to Fed. R. Civ. P. 23; declaring that Plaintiffs are proper class representatives; and appointing Plaintiffs' attorneys as class counsel;

b) Awarding injunctive relief requiring Verizon to protect Business unit account holders from further unauthorized access to their accounts and to ensure reasonable protections going forward to avoid further known and unknown irreparable injury caused by ongoing disruptions to their businesses;

c) Awarding compensatory, statutory, punitive, and exemplary damages to the fullest extent permitted by law;

d) Awarding Plaintiffs and the other Class and Subclass members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

e) Awarding pre- and post-judgment interest at the maximum legal rate; and

51

f) Granting all such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  November  23, 2021          By: _____

Ira N. Glauber
Yonit A. Caplow
**DILWORTH PAXSON LLP**
99 Park Ave., Suite 320
New York, NY 10016
Tel: (917) 675-4252
Fax: (215) 575-7200
iglauber@ dilworthlaw.com
sdreier@dilworthlaw.com

***Counsel for Plaintiffs and Putative Consumer
Class and Subclasses***

*OF COUNSEL*

Greg G. Gutzler
**DICELLO LEVITT GUTZLER LLC**
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, New York 10165
Tel: (646) 933-1000
ggutzler@dicellolevitt.com

Adam J. Levitt
Amy E. Keller
James A. Ulwick
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
julwick@dicellolevitt.com

Catherine Pratsinakis (*admitted pro hac vice*)
Jessica L. Titler-Lingle (*admitted pro hac vice*)
**DILWORTH PAXSON LLP**

1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7013
cpratsinakis@dilworthlaw.com
jtitler-lingle@dilworthlaw.com

*Counsel for Plaintiffs and Putative*
*Consumer Class and Subclasses*