UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――
FRITZCO LLC, *et al.*,

                              Plaintiffs,

                -v-

VERIZON COMMUNICATIONS INC. *et al.*,

                              Defendants.

21-CV-10432 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs FritzCo LLC, Los Gatos-Saratoga Community Education and Recreation ("Los Gatos"), and the Law Office of Samuel M. Smith ("the Smith firm") bring suit against Verizon Communications, Inc. and Cellco Partnership (doing business as Verizon Wireless) (jointly, "Verizon") alleging negligence, negligence per se, breach of implied contract, and unjust enrichment stemming from a 2020 data breach affecting Verizon Wireless business accounts. Plaintiffs seek to certify a nationwide class on their common law tort claims and to certify subclasses based on claims deriving from data protection statutes in California, Indiana, and Texas. Verizon moves to compel FritzCo and the Smith firm to pursue their claims in arbitration and to stay litigation pending the outcome of the arbitration process. For the reasons that follow, Defendants' motion to compel arbitration is granted.

**I.      Background**

    The following facts are drawn from the amended complaint and presumed true for the purposes of this motion. (*See* Dkt. No. 21-3 ("Unredacted Amended Complaint")).

    During the events in question, Plaintiffs FritzCo, the Smith firm, and Los Gatos each had a business account with Verizon for the provision of cell phone service and devices. (*Id.* ¶¶ 37, 75, 80.) Before activating their Verizon services, FritzCo and the Smith firm signed a Verizon

1

Wireless Retail Major Account Agreement, which governed the terms of the business relationship between the parties.  (*Id.* ¶¶ 38, 80.)  Each Agreement contained a Dispute Resolution provision stating that the parties would "both agree to arbitrate any dispute that arises under or relates to this Agreement."  (Dkt. No. 21-2 at 6-7.)  Further, they agreed that:

> (a) the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as amended, shall govern this provision; (b) any arbitration shall be held before an independent arbitrator, governed and administered by the American Arbitration Association; (c) the arbitrator shall issue a written opinion giving the reasons for any award; (d) the award shall be binding on both Parties with no right of appeal; and (e) no arbitration can be on a class basis or be joined or consolidated with another arbitration. If the prohibition in subsection (e) is found to be unenforceable, then neither of us shall be required to arbitrate. The arbitration requirements of this section will not apply if either Party faces an unauthorized disclosure of Confidential Information or an infringement of intellectual property, in which case either Party may seek preliminary and final injunctive relief.

(*Id.*)  "Confidential Information" was defined as "anything concerning the disclosing Party's business, customers, products, services, trade secrets and personnel, which the disclosing Party labeled or designated as confidential."  (*Id.* at 7.)  As part of each Agreement, Plaintiffs designated a person or persons within their organization to serve as a Point of Contact for Verizon, providing their email address and phone number.  (*Id.* at 2.)

On December 1, 2020, FritzCo experienced an "email bomb" attack:  An unknown party began sending tens of thousands of emails per hour to the company's primary business account (Dkt. No. 21-3 ¶¶ 40-41.)  The apparent purpose of the attack was to hide legitimate emails in a deluge of spam.  As a result, FritzCo was late to discover a receipt from Verizon reflecting the fraudulent purchase of an Apple iPhone 12 using its account.  (*Id.* ¶¶ 42-44.)  FritzCo later discovered more fraudulent purchases and determined that the unknown third parties had not been thwarted by Verizon's security features, including multi-factor authentication.  (*Id.* ¶¶ 49-54.)

In late 2020, the Smith firm experienced an identical email bomb attack, which also led to unauthorized purchases on its account. (*Id.* ¶¶ 83-84.) It alleges similar data security lapses by Verizon. (*Id.* ¶¶ 86-88.)

Los Gatos experienced a similar chain of events, beginning in November 2020. (*Id.* ¶¶ 77-78.) While Los Gatos contracted with Verizon for business services, the parties are unable to locate an executed version of the Major Account Agreement between it and Verizon. (*Id.* ¶ 75; Dkt. No. 36 n.1.)

Plaintiffs allege that the email bombings and subsequent fraud were the direct result of a breach of Verizon's business server and Verizon's failure to guard their confidential information, including email addresses. (Dkt. No. 21-3 ¶ 94.) They further allege that thousands of other businesses have been similarly injured by Verizon and that similar data breaches "may be ongoing." (*Id.* ¶ 72.)

## II.     Discussion

Under the Federal Arbitration Act, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (citing 9 U.S.C. § 2). The Supreme Court has made clear that the FAA "embod[ies] [a] national policy favoring arbitration." *Nicosia*, 834 F.3d at 220 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). Nonetheless, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Nicosia*, 834 F.3d at 220 (citation omitted). The Second Circuit has emphasized that the presumption in favor of arbitration controls where the parties' intent is not clear in the written agreement: "In accordance with the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal citations and quotations omitted). "Threshold questions of arbitrability, such as whether the arbitration agreement applies to a particular dispute, presumptively should be resolved by the court and not referred to the arbitrator." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250-51 (2d Cir. 2019).

When a party petitions for a motion to compel arbitration, the district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Id.* (citation omitted). To assess whether a stay is required, a court must resolve four questions: "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some but not all claims are arbitrable, whether the remaining claims should be stayed pending arbitration." *Cour Pharms. Dev. Co., Inc. v. Phosphorex, Inc.*, No. 20-CV-4417, 2021 WL 1062568, at *2 (S.D.N.Y. Mar. 19, 2021) (citation omitted).

### A. Agreement to Arbitrate

The threshold issue — whether FritzCo and the Smith firm agreed with Verizon to arbitrate — is a question of state contract law. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). To be valid under New York law, a contract must contain manifestations of mutual assent. *Cour Pharms. Dev. Co., Inc.*, 2021 WL 1062568, at *2. Here, there is no dispute that the parties mutually agreed to arbitrate at least some types of claims. Under paragraph 25 ("Dispute Resolution") of the Major Account Agreement, the parties stated — subject to certain exceptions — that "[w]e both agree to arbitrate any dispute that arises under or relates to this Agreement." (Dkt. No. 21-2 at 6-7.) That language "clearly manifests an intention by the parties

to submit certain disputes to a specified third party for binding resolution." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988).

**B.      Scope of the Arbitration Clause**

Having concluded that the Dispute Resolution provision in the Major Account Agreement is an enforceable arbitration clause, the Court must next decide whether Plaintiffs' claims come within its scope. The Second Circuit has framed the following approach for determining whether a given dispute falls within the scope of an arbitration agreement:

> (1) [T]he district court must first determine whether the arbitration clause at issue is broad or narrow; (2) if the clause is narrow, the court must determine whether the particular dispute involves a matter that 'is on its face within the purview of the clause' or a 'collateral matter;' and (3) if the court determines that the arbitration clause is narrow and the particular dispute involves a 'collateral matter,' the court should not compel arbitration of that dispute.

*Polit v. Glob. Foods Int'l Corp.*, No. 14-CV-7360, 2015 WL 1780161, at *3 (S.D.N.Y. Apr. 20, 2015). But even if the Court determines that the arbitration clause in question is broad, a dispute is not arbitrable if (1) the dispute concerns a matter that is "on its face, clearly collateral" to the contract; (2) an express provision in the agreement excludes the particular dispute from arbitration, or (3) "forceful" evidence of a purpose to exclude the claim from arbitration is presented. *Cour Pharms. Dev. Co., Inc.*, 2021 WL 1062568, at *3 (citing *Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 983 (2d Cir. 1997)).

The Major Account Agreement is "a quintessential broad arbitration clause." *Polit*, 2015 WL 1780161, at *3. The pertinent language ("[w]e both agree to arbitrate any dispute that arises under or relates to this Agreement") is indistinguishable from language that the Second Circuit has found to be broad. *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause."); *Polit*, 2015 WL

1780161, at *3 (finding that a clause stating that "[a]ny claim or controversy that arises out of or relates to [the agreement], or breach of it, shall be settled by arbitration" was broad).

Because the Major Account Agreement is broad, "there is a presumption that the entire dispute is subject to arbitration." *Id*. Plaintiffs argue that even if the terms of the Major Account Agreement are broad enough to trigger the presumption in favor of arbitration, each of the three exceptions framed by the Second Circuit applies: First, Plaintiffs' claims arising from the data breach are collateral to the terms of the Agreement; second, the Agreement expressly exempts disputes arising from the "unauthorized disclosure of Confidential Information" from arbitration; and third, there is "forceful evidence" of a reason to exclude the types of claims at issue here from arbitration. (Dkt. No. 44 at 34.) The Court addresses each in turn.

The Second Circuit has held that if a dispute concerns a matter that is "on its face . . . clearly collateral to the contract," there is still a presumption in favor of arbitration as long as the claim "implicates issues of contract construction or the parties' rights and obligations under it." *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995). But if a collateral claim "present[s] no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it," then it is "beyond the scope of the arbitration agreement." *Id*. Plaintiffs argue that their claims arising from the data breach are collateral to the Account Agreement because the Agreement relates only to the purchase of wireless services and related matters, including billing, payments, and warranties. (Dkt. No. 44 at 35.)

The Court disagrees. Plaintiffs' interpretation of the Account Agreement is unduly narrow. Though Plaintiffs do not assert a breach of contract claim, the terms of the Major Account Agreement implicate the extent of Verizon's liability for Plaintiffs' injuries. For example, the "Limitation of Liability" clause is relevant because it exculpates Verizon from

6

liability due to "loss of or wrongful access to data stored by Verizon" or "any interruption of wireless service." (Dkt. No. 21-2 at 6.)  More broadly, as Verizon emphasizes, Plaintiffs provided the impacted data to it under the terms of the Major Account Agreement.  The fraudulent orders were made on accounts governed by the Agreement.  This is not a case where a plaintiff's claims involve a "collateral agreement" ancillary to the primary arbitration agreement, but instead one where the claims "arise[] under the main agreement but require[] determination of a sub-issue." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).  Plaintiffs' claims arising from the data breach are not collateral to the Major Account Agreement.

      Plaintiffs next argue that the Account Agreement expressly exempts from arbitration claims relating to the data breach.  The pertinent language reads:  "The arbitration requirements of this section will not apply if either Party faces an unauthorized disclosure of Confidential Information or an infringement of intellectual property, in which case either Party may seek preliminary and final injunctive relief." (Dkt. No. 21-2 at 7.)

      The Agreement further defines Confidential Information as "anything concerning the disclosing Party's business, customers, products, services, trade secrets and personnel, which the disclosing Party labeled or designated as confidential."  (*Id.*)  Verizon asserts that this arbitration 'carve-out' does not apply here because: (1) the Confidential Information clause relates only to "threatened or impending" disclosures, not those that have already occurred; (2) even if the Clause applies, it contemplates only a limited right to seek injunctive relief to prevent imminent harm before an arbitrator is appointed; and (3) because Plaintiffs plead an adequate remedy at law (in the form of money damages), they are not entitled to further injunctive relief in any case. (Dkt. No. 51 at 5-6.)

Verizon's first argument addresses the dispositive issue. The text of the Agreement is clear that a party that "faces" an unauthorized disclosure of Confidential Information can pursue a final, legal remedy in court, entirely outside of arbitration. And the information disclosed in the data breaches — contrary to Verizon's protests — is clearly Confidential Information as contemplated by the Agreement. The determining factor, then, is whether Plaintiffs are 'facing' such a disclosure of Confidential Information. New York law requires the Court to interpret the terms of the Agreement based on their plain meaning. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). To 'face' a problem, it must be ongoing or imminent. Here, the Amended Complaint indicates that FritzCo and the Smith firm do not face an ongoing or imminent threat of disclosure: FritzCo alleges that the data incursion began on or around December 1, 2020 and ended by January 2021. (Dkt. No. 21-3 ¶¶ 40-57.) The Smith firm alleges that the incursion began in "late 2020" and implies that it ended sometime thereafter. (*See id.* ¶¶ 80-88.) Because the unauthorized disclosure of Confidential Information is a past event rather than a present or future threat, FritzCo and the Smith firm cannot rely on the arbitration carve-out in the Major Account Agreement to avoid arbitration. While Plaintiffs do reference the fact that thousands of potential class members were victims of the data breach, and similar incursions may be ongoing against other businesses across the country, Plaintiffs cannot rely on theoretical claims of potential class members to sidestep the express terms of the arbitration agreement.

Even if the Court were to conclude that the meaning of "faces" in the context of the Dispute Resolution section presents a closer call, it would still be compelled to resolve the question in favor of arbitration. Under the Federal Arbitration Act, "any doubts concerning the

8

scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Plaintiffs' reliance on the express arbitration carve-out is unavailing.

The final factor is whether there is "forceful" evidence of a purpose to exclude the claim from arbitration. FritzCo and the Smith firm argue that they should not be compelled to submit to arbitration because, on other occasions, Verizon has taken advantage of arbitration carve-outs to bring its own claims in federal court rather than arbitration. (Dkt. No. 44 at 48.) Verizon's decision to avoid arbitration in other factual and legal circumstances has little relevance here, and hardly rises to the level of the "forceful evidence" that this Court would need to find to overcome the presumption in favor of arbitration.

### C.  Federal Statutory Claims

Plaintiffs do not raise any federal statutory claims — their claims all sound in common law tort or certain state consumer protection statutes. (Dkt. No. 21-3 ¶¶ 125-232.)

### D.  Stay of Non-Arbitration Plaintiff's Claims

If some, but not all, claims in a matter are arbitrable, the Court must decide whether the remaining claims must be stayed pending arbitration.

The parties acknowledge that there is no executed Major Account Agreement on record between Verizon and Los Gatos. (Dkt. No. 36 at 5; Dkt. No. 44 at 41.) Verizon urges the Court to stay proceedings on Los Gatos' claims while arbitration moves forward for FritzCo and the Smith firm. (Dkt. No. 36 at 10.) Los Gatos argues that to stay its class action "in favor of two arbitrations involving entities with whom [it] has no relationship" would be "irrational." (Dkt. No. 44 at 42.)

The decision to grant a stay on Los Gatos' claims is subject to the Court's discretion and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-255 (1936).  A stay is appropriate "where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir.1991) (quoting *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir.1964) (quotations omitted)).  The party seeking to stay proceedings "must first establish that there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ. 4730, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000) (internal citations and quotations omitted).  The burden is on the movant to show (1) "that it will not hinder arbitration," (2) "that the arbitration will be resolved within a reasonable time," and (3) "that such delay that may occur will not cause undue hardship to the non-moving party." *Id.*

A stay is appropriate here.  First, Verizon has established that Los Gatos' claims and those of FritzCo and the Smith firm "arise out of the same series of alleged acts." *Id.*; *see* Dkt. No. 36 at 10-11.  All three plaintiffs allege a data breach of sensitive information they provided to Verizon after setting up a business account.  (Dkt. No. 21-3 ¶¶ 76-77.)  Like FritzCo and the Smith firm, Los Gatos alleges that the data breach began with its accounts being email bombed, which then permitted a third party to make thousands of dollars of unauthorized purchases on its behalf—all while Verizon took no action.  (*Id.*)  "Arbitration may well clarify and perhaps even simplify the remaining issues which must be litigated." *Home Life Ins. Co. v. Kaufman*, 547 F. Supp. 833, 836 (S.D.N.Y. 1982).  In particular, the arbitration proceeding may clarify disputed

issues of causation: Verizon maintains that any incursions into the Plaintiffs' confidential data were caused by their own lapses in information security, Dkt. No. 37 at 14, while Plaintiffs squarely place the blame on Verizon.

Further, Defendants have shown that they will not hinder arbitration. In analyzing this factor, courts may determine that defendants' "vigorous pursuit of their motion to compel [arbitration] . . . indicates they will make every effort necessary to reach a speedy disposition of [the] dispute." *Orange Chicken, L.L.C.*, WL 1858556, at *10. Here, Verizon has stated that it views arbitration as a means to achieve a "speedy resolution of the controversy." (Dkt. No. 36 at 14.)

The Court is required to recognize, however, the danger of undue prejudice to Los Gatos if arbitration proceedings are excessively prolonged: "[W]hen the district court stays its proceedings on the ground that the resolution of issues in arbitration may be determinative of issues in the case, the court is required to tailor its stay so as not to prejudice the non-moving litigant unduly." *Sierra Rutile Ltd.*, 937 F.2d at 750; *see also Nederlandse*, 339 F.2d at 442 (if "the district court does grant a stay, its order should expressly provide that the plaintiff may move to vacate the stay if the arbitration proceedings have not been concluded after a stated and limited period of time."). To that end, Los Gatos may seek leave of court to vacate the stay if arbitration is not completed within one year after the date of this Opinion and Order.

### III. Conclusion

The Court concludes that Plaintiffs FritzCo and the Smith firm have not rebutted the presumption of arbitrability flowing from their arbitration agreements with Verizon. They are therefore compelled to arbitrate the relevant claims. Defendants argue that, under the Major Account Agreement, the arbitration plaintiffs must be compelled to arbitrate on an individual, rather than class, basis. "[C]ourts must place arbitration agreements on an equal footing with

other contracts and enforce them according to their terms." *AT&T Mobility LLC*, 563 U.S. at 339 (citations omitted).  Here, the Major Account Agreement is crystal clear: "[N]o arbitration can be on a class basis or be joined or consolidated with another arbitration."  (Dkt. No. 21-2 ¶ 25.)  Plaintiffs do not contest this reading of the text.  (Dkt. No. 44 at 49-50.)  FritzCo and the Smith firm are required to pursue their arbitration claims individually.

For the foregoing reasons, Verizon's motion compel arbitration as to the claims by Plaintiffs FritzCo and Law Office of Samuel M. Smith and otherwise stay this litigation is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 31.[1]  The Clerk is also directed to mark this case as STAYED.

SO ORDERED.

Dated: September 30, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] Defendants have also filed a 12(b)(6) motion to dismiss Plaintiffs' claims.  (Dkt. No. 33.)  The Court defers ruling on that motion while arbitration proceeds.

12